**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOEL SOLKOFF<br>120 E Beaver Ave, Apt 107<br>State College, PA 16801<br><br>    Plaintiff,<br><br>  v.<br><br>THE PENNSYLVANIA STATE<br>UNIVERSITY,<br>201 Old Main<br>University Park, PA 16802,<br><br>    Defendant. | Case No.<br><br><br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Joel Solkoff ("Mr. Solkoff"), through his undersigned counsel and for his complaint against Defendant The Pennsylvania State University ("Penn State"), states as follows.

## INTRODUCTION

1. This is an action to recover unpaid wages arising under state and federal law and as a consequence of Penn State's failure to compensate Mr. Solkoff for any of the work he performed as an employee of Penn State over the course of many years.

## THE PARTIES

2. Mr. Solkoff is a citizen of the Commonwealth of Pennsylvania and a former employee of Penn State.

3. Penn State is a nonprofit corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 201 Old Main, University Park, PA 16802. Penn State maintains a variety of campuses throughout the Commonwealth of

Pennsylvania, including within this District and Division, wherein it engages in educational, research and other functions, and generates and derives revenue therefrom from individuals and entities within and without this Commonwealth.

4.      Penn State is an employer within the meaning of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203(d), the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.103, and the Pennsylvania Wage Payment Collection Law ("WPCL"), 43 P.S. § 260.2a.

5.      Mr. Solkoff is an employee within the meaning of the FLSA, 29 U.S.C. 203, and an "employe" within the meaning of the PMWA, 43 P.S. § 333.103, and WPCL, 43 P.S. § 260.2a.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over Mr. Solkoff's claims arising under the FLSA pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, as it is a law of the United States. The Court has subject matter jurisdiction over Mr. Solkoff's claims arising under Pennsylvania law pursuant to 28 U.S.C. § 1367 because those claims are so related to his FLSA claim that they form part of the same case or controversy.

7.      The Court has personal jurisdiction over Penn State as it is an entity organized and existing under the laws of the Commonwealth of Pennsylvania.

8.      Venue is proper in this District and Division pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1391 as Penn State is deemed to reside in this District and maintains various campuses within this District.

## FACTS COMMON TO ALL COUNTS

9.      Mr. Solkoff is a 70-year old author with a bachelor's degree from Columbia University.  Over the course of his long career, he has worked in various roles as an author, including having worked as journalist, technical writer, and speech writer.

10.     Mr. Solkoff became paralyzed and lost the use of his legs in 1994.

11.     Penn State's relationship with Mr. Solkoff began in or about 2009 when he began participation in the Experience Works program funded by the United States Department of Labor. As a part of that program, he was assigned to the Department of Architectural Engineering where he was paid minimum wage for 10 hours of work per week.

12.     Mr. Solkoff ceased working in the Experience Works program in or about 2012 as a result of being diagnosed with kidney cancer.

13.     After leaving the Experience Works program, Mr. Solkoff became directly employed by Penn State as an adjunct research assistant in or about 2012.  He was provided with an office, keys to the department's buildings, a Penn State email address, access to the Penn State libraries, computer systems, a Penn State identification badge, and other facilities in order to perform the duties of his employment.  Mr. Solkoff completed mandatory employee training on reporting child abuse and understanding Title IX, which was required of all Penn State employees.

14.     Mr. Solkoff's job as a Penn State employee required him to research various developments in architectural engineering pertinent to individuals with disabilities, draft articles and papers related thereto, and otherwise assist Penn State faculty with their research.

15.     As a Penn State employee, Mr. Solkoff reported to Dr. John Messner, Dr. Sonali Kumar, Dr. Richard Behr, and Dr. Ali Memari at various times during his tenure. Each of the aforementioned Penn State employees reviewed Mr. Solkoff's work, provided feedback, guidance, and assignments for him to complete on behalf of the Department of Architectural Engineering. Such work included, *inter alia*, preparing a lengthy technical paper with Dr. Memari in which Mr. Solkoff was a co-author.

16.     Penn State did not provide Mr. Solkoff with a mechanism by which he could track the hours worked on its behalf.  Pursuant to 29 C.F.R. Part 516, Penn State was required to possess and maintain Mr. Solkoff's time sheets and/or other records related to his hours worked.

17.     Mr. Solkoff estimates that he typically performed between 25 and 30 hours per week for 46 to 52 weeks per year during his employment with Penn State.  There were also occasions, however, wherein he worked in excess of 40 hours per week.

18.     Penn State knowingly and willfully directed Mr. Solkoff to perform services on its behalf, took the benefit of those services, and failed to provide Mr. Solkoff with compensation for any of the work he performed on Penn State's behalf as a Penn State employee.  Instead, Mr. Solkoff was offered a "gentleman's agreement" through which he was promised compensation if the work he performed resulted in the Department of Architectural Engineering receiving grant money.

19.     Mr. Solkoff was denied participation in Penn State's employee benefit plans, despite being a Penn State employee who may have otherwise been eligible for them.

20.     The so-called "gentleman's agreement" was illusory and in violation of Penn State's obligations under applicable law.  Moreover, Mr. Solkoff never received any compensation as a result of it.

21.     Penn State terminated Mr. Solkoff's employment in October 2017.

## COUNT I
## VIOLATION OF THE FLSA

22.     Mr. Solkoff repeats, reaffirms, and realleges paragraphs 1 through 21 of the Complaint as if they were fully restated at length herein.

23.     The FLSA requires, pursuant to 29 U.S.C. § 206, that all employers pay their employees at least a minimum wage for all hours worked.

24.     The FLSA requires, pursuant to 29 U.S.C. § 207, that non-exempt employees be compensated at one and a half times their regular hourly rate of pay for all hours worked in excess of forty hours per week.

25.     Mr. Solkoff, by virtue of his position and Penn State's failure to pay him on a salaried basis, was a non-exempt employee.

26.     Penn State failed to pay Mr. Solkoff any wages for his hours worked, and the proper rate of pay to which he was entitled, and at which similarly situated employees were compensated, is presently unclear due to Penn State's concealment of such information.

27.     Penn State's failure to pay Mr. Solkoff any wages for the hours he worked as its employee is a violation of the FLSA.

28.     As a result of Penn State's violation of the FLSA, there is now a sum due and owing from it in an amount that is not yet determined because of its concealment of the proper rate of pay to which Mr. Solkoff was entitled and due to its failure to track the hours he worked as required by the FLSA and its implementing regulations.

29.     Penn State's violation of the FLSA has been willfull.

30.     As a result of Penn State's violation of the FLSA, Mr. Solkoff is entitled to all wages due and owing, an equal amount as liquidated damages, his costs, and his reasonable attorneys' fees, all in an amount to be determined at trial. *See* 29 U.S.C. § 216.

## COUNT II
## VIOLATION OF THE PMWA

31.     Mr. Solkoff repeats, reaffirms, and realleges paragraphs 1 through 30 of the Complaint as if they were fully restated at length herein.

32.     The PMWA requires, pursuant to 43 P.S. § 333.104, that all employers pay their employees at least a minimum wage for all hours worked.

5

33.     The PMWA requires, pursuant to 43 P.S. § 333.104(c), that non-exempt employees be compensated at one and a half times their regular hourly rate of pay for all hours worked in excess of forty hours per week.

34.     Mr. Solkoff, by virtue of his position and Penn State's failure to pay him on a salaried basis, is a non-exempt employee within the meaning of the PMWA.

35.     Penn State failed to pay Mr. Solkoff any wages for his hours worked, and the proper rate of pay to which he was entitled, and to which similarly situated employees were compensated, is presently unclear due to Penn State's active concealment of such information.

36.     Penn State's failure to pay Mr. Solkoff any wages for the hours he worked as its employee is a violation of the PMWA.

37.     As a result of Penn State's violation of the PMWA, there is now a sum due and owing from it in an amount that is not yet determined because of its concealment of the proper rate of pay to which Mr. Solkoff was entitled and due to its failure to track the hours he worked as required by the PMWA and its implementing regulations.

38.     Penn State's violation of the PMWA has been willfull.

39.     As a result of Penn State's violation of the PMWA, Mr. Solkoff is entitled to all wages due and owing, liquidated damages, his costs, and his reasonable attorneys' fees, all in an amount to be determined at trial. *See* 43 P.S. § 333.113.

## COUNT III
## VIOLATION OF THE WPCL

40.     Mr. Solkoff repeats, reaffirms, and realleges paragraphs 1 through 39 of the Complaint as if they were fully restated at length herein.

41.     At all relevant times, Mr. Solkoff was employed by Penn State within the meaning of the WPCL.

42.    Penn State is an employer within the meaning of the WPCL.

43.    Pursuant to the WPCL, every employer shall pay all wages, other than fringe benefits and wage supplements, due to its employees on regular paydays designated in advance by the employer.

44.    Penn State did not pay Mr. Solkoff his wages on regular paydays designated in advance; it did not pay him at all.

45.    By repeatedly and unjustifiably failing to pay Mr. Solkoff the wages owed to him as alleged herein, Penn State has violated the WPCL.

46.    Pursuant to the WPCL, any employee to whom any type of wage is payable may institute an action under the WPCL to recover unpaid wages, fringe benefits, and liquidated damages, as well as costs and reasonable attorneys' fees, in any court of competent jurisdiction for and on behalf of himself. 43 P.S. §§ 260.9a, 260.10.

47.    Penn State is thus liable to Mr. Solkoff for all wages owed, fringe benefits, liquidated damages as permitted in 43 P.S. §§ 260.9a and 260.10, his costs, and reasonable attorneys' fees.

### COUNT IV
### UNJUST ENRICHMENT

48.    Mr. Solkoff repeats, reaffirms, and realleges paragraphs 1 through 47 of the Complaint as if they were fully restated at length herein.

49.    Mr. Solkoff through the labor and work he performed on behalf of and at the behest of Penn State conferred a benefit upon Penn State.

50.    Penn State appreciated such benefit by, *inter alia*, receiving Mr. Solkoff's input, feedback, and the value of his research in the papers he co-wrote with Penn State faculty, and the

publicity his advocacy as a published author conferred on the Department of Architectural Engineering over the course of many years.

51.      Penn State has failed to compensate Mr. Solkoff in any respect for the benefits he conferred on it.

52.      It would be inequitable and unjust for Penn State to retain the value of Mr. Solkoff's services and labor without the payment of value for such services.

## PRAYER FOR RELIEF

Wherefore, Mr. Solkoff respectfully requests that the Court grant him the following relief:

a.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the PMWA, and the WPCL;

d.      An injunction requiring Penn State to cease its unlawful practices under, and comply with, the FLSA, PMWA, and WPCL;

e.      An award of unpaid wages at Mr. Solkoff's to be determined regular rate of pay for those hours worked up to 40 hours per week;

f.      An award of overtime wages for all hours worked in excess of 40 in a workweek at a rate of one and one-half time the regular rate of pay due under the FLSA and the PMWA;

g.      An award of liquidated and/or punitive damages as a result of Penn State's willful violation of the FLSA pursuant to 29 U.S.C. § 216 and/or Pennsylvania law;

h.      An award of damages representing the employer's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

i.      An award of prejudgment and post-judgment interest;

j.      An award of costs and expenses of this action together with reasonable attorneys' fees and costs;

k.      An award of compensation for the value of his services based on Penn State's unjust enrichment from the performance of such services in the event that the Court determines that Mr. Solkoff was not a Penn State employee; and

l.      Such other and further relief as this Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiff demands a trial by jury for all issues of fact.

Respectfully submitted,

Adam Harrison Garner (Bar I.D. 320476)
The Garner Firm, Ltd.
1515 Market Street, Suite 1200
Philadelphia, PA 19102
(215) 645-5955 (Tel)
(215) 645-5960 (Fax)
adam@garnerltd.com

Dated: February 15, 2018