# Exhibit A

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made and entered into by and between the Pennsylvania State University (the "University"), Ali Memari ("Dr. Memari"), M. Kevin Parfitt ("Mr. Parfitt") (collectively, the "Defendants"), on the one hand, and Joel Solkoff ("Solkoff"), on the other hand, (together, "the Parties").  The effective date of this Agreement shall be the day after the Revocation Period expires or when the University receives a Form W-9 from Solkoff and his attorney, whichever is later (the "Effective Date").

WHEREAS, Solkoff filed a complaint in the United States District Court for the Eastern District of Pennsylvania, Docket Number No. 18-cv-683, alleging, *inter alia*, violations of wage payment laws, violations of the First Amendment, and unjust enrichment (the "Complaint"); and

WHEREAS, Solkoff also filed complaints with the Pennsylvania Human Relations Commission ("PHRC"), PHRC Case Nos. 201701965, 201800387, 201800388, alleging retaliation and discrimination based on his age and his disability (the "PHRC Complaints");

WHEREAS, the Defendants have denied Solkoff's claims, and specifically deny that Solkoff was ever employed by the University; and

WHEREAS, in exchange for Solkoff entering into this Agreement, the Defendants have agreed to provide Solkoff consideration to which he would not otherwise be entitled under contract, policy, or law, such consideration to be outlined herein.

WHEREFORE, in consideration of the covenants, promises, and agreements contained herein, and intending to be legally bound hereby, the Parties agree as follows:

**1.** **Settlement Payment.**  In consideration of the execution of this Agreement, and the promises contained herein, the University, on its own behalf and on behalf of all Defendants, agrees to pay Solkoff the sum of Ninety Seven Thousand, Five Hundred Dollars ($97,500.00) (the "Settlement Payment"), after all of the following conditions have occurred:  1) twenty-one (21) days have passed since the execution and non-revocation of this Agreement; 2) the University has received an executed IRS Form W-9 from Solkoff and his attorney; 3) the Court has approved, as it deems appropriate, any part of this settlement relating to the Fair Labor Standards Act; and 4) a Rule 41.1(b) Order has been entered by the Court dismissing this action with prejudice.

The Settlement Payment shall be distributed as follows:

**a.** One check in the gross amount of Thirty One Thousand, One Hundred Five Dollars and Fifty Four Cents ($31,105.54), less appropriate deductions for federal and state withholding and other applicable taxes, will be made payable to "Joel Solkoff" for settlement of his alleged unpaid wage damages (including his FLSA claim) and delivered to Adam H. Garner, Esq. at the law firm of The Garner Firm, Ltd.  The University shall issue Solkoff an IRS Form W-2 for this amount;

      **b.**    One check in the gross amount of Thirty One Thousand, One Hundred Five Dollars and Fifty Three Cents ($31,105.53) will be made payable to "Joel Solkoff" for settlement of his alleged non-wage damages and delivered to Adam H. Garner, Esq. at the law firm of The Garner Firm, Ltd.  The University shall issue Solkoff an IRS Form 1099 for this amount; and

      **c.**    One check in the gross amount of Thirty Five Thousand, Two Hundred Eighty Eight Dollars and Ninety Three Cents ($35,288.93) will be made payable to "The Garner Firm, Ltd." for Solkoff's Costs and Reasonable Attorneys' Fees.  The University shall issue both Solkoff and The Garner Firm, Ltd. an IRS Form 1099 for this amount.

      **2.**    **Tax Treatment.**  Solkoff acknowledges that he has not relied on any statements or representations by the Defendants with respect to the tax treatment of the payments contemplated by this Agreement.  Solkoff shall be responsible for all taxes, if any, on the payments, except for any payroll taxes to be borne by the University on that portion of the settlement payment that is subject to payroll tax withholding.  In the event that any taxing authority seeks a tax payment, deficiency, penalty, or interest against the Defendants with respect to any payments made pursuant to this Agreement, Solkoff shall defend, indemnify, and hold the Defendants harmless from any payment on account of taxes owed by Solkoff (including any interest and/or penalties thereon).  The Defendants shall provide reasonable notice to Solkoff after it becomes aware that any taxing authority is seeking such payment deficiency, penalty, or interest.  In the event of an inquiry by any governmental or taxing authority, none of the Parties shall assert any position contrary to the terms of this Agreement.

      **3.**    **Valuable Consideration.**  Solkoff acknowledges that he is receiving valuable consideration to which he is not otherwise entitled under policy or law in exchange for executing this Agreement.  Solkoff agrees further that he will not argue that the Agreement, in whole or in part, is not supported by sufficient consideration.  Solkoff acknowledges and agrees that the release and covenant not to sue set forth in this Agreement are essential and material terms of this Agreement and that, without such release and covenant not to sue, no agreement would have been reached by the Parties and no payments or benefits under this Agreement would have been provided to him.

      **4.**    **Complete Release of Claims.**  Solkoff, for himself, his heirs, administrators, representatives, executors, successors, and assigns, hereby fully releases, waives, and forever discharges the University, Dr. Memari, and Mr. Parfitt, each of their present, future, and former officers, directors, trustees, employees, students, agents, representatives, attorneys, outside counsel, successors, and assigns, whether past, present, or future (collectively, the "Released Parties"), from any and all administrative claims, actions, suits, debts, demands, damages, claims, judgments, or liabilities of any nature, including costs and attorneys' fees, whether known or unknown, arising prior to the Effective Date of this Agreement, including, but not limited to (and by way of example only), all claims for payments or benefits pursuant to any University policy, practice, or plan, and all claims arising in law or equity or any claims arising under the following (each as amended):  the Pennsylvania Human Relations Act; the Employee Retirement Income Security Act of 1974 (ERISA); Title VII of the Civil Rights Act of 1964; the Civil Rights Acts of 1866, 1964 and 1991; the Age Discrimination in Employment Act

("ADEA"); the Americans with Disabilities Act of 1990; the Rehabilitation Act of 1973; the National Labor Relations Act; the Occupational Safety and Health Act of 1970; the Equal Pay Act of 1963; the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"); the Fair Labor Standards Act ("FLSA"); the Family and Medical Leave Act ("FMLA"); the Pennsylvania Wage Payment and Collection Law ("WPCL"), the Pennsylvania Minimum Wage Act ("PMWA"); and any federal, state, or local statute, rule, or regulation related to employee rights, wages, fair employment practices, leave entitlements, or benefits; common law claims; and any other claims of any nature whatsoever against any of the Released Parties including all claims that were made or could have been made in the Complaint or which he could have asserted before the PHRC (the "Released Claims"). Solkoff expressly agrees and understands that this release and waiver of claims is a general release, and that any reference to specific claims is not intended to limit the release and waiver of claims ("Complete Release of Claims"). Solkoff expressly agrees and understands that this Complete Release of Claims means that he is releasing the Released Parties from all claims, whether known or unknown, asserted or unasserted, and whether or not the claims arise out of his alleged employment with or separation of his alleged (and contested) employment from the University, subject only to the exceptions set forth in the following sentence. This Complete Release of Claims shall not extend to or include the following: (a) any claim for unemployment or worker's compensation benefits that cannot be waived pursuant to applicable state law, (b) any rights or claims that arise on or after the Effective Date of this Agreement, or (c) the right to enforce this Agreement. Solkoff represents and warrants that, as of the Effective Date of this Agreement, he has not assigned or transferred any claims of any nature he otherwise would have against the Defendants, their successors, or assigns.

**5.     Future Access to the University's Libraries.**  Should he desire it, Solkoff may obtain the same access to the University's libraries as is offered to members of the general public, subject to all limitations, rules, and regulations that are placed on all other members of the general public. Solkoff is also permitted to apply for, but will not be guaranteed, a Short Term Access Account for Research (a "STAAR" account) at University libraries. Should Solkoff receive a STAAR account, he is again subject to all limitations, rules, and regulations that apply to other individuals with STAAR accounts.

**6.     Return of All "Work Papers" and "Intellectual Property".**  Within thirty (30) days of the Effective Date of this Agreement, the Defendants agree to return any and all "work papers", in digital or hard copy, generated by Solkoff that they can locate that are in any of the Defendants' possession. The Defendants release any such rights they may have to any "intellectual property" generated or created by Solkoff during his time affiliated with the University. The Parties shall use reasonable efforts to locate any such work papers and to resolve any dispute about whether documents are "work papers" of Mr. Solkoff. The Parties agree and understand that so long as best efforts are utilized, no efforts taken pursuant to this Paragraph shall be deemed a breach of this Agreement.

**7.     Use of the University Name.**  As of the Effective Date of this Agreement, Solkoff shall not use the University's name in conjunction with anything he may publish or promote other than to say that he "previously performed services at Pennsylvania State University as part of the federally-sponsored Experience Works program." Other than the

foregoing, Solkoff shall not assert, represent, or otherwise claim any current or former University affiliation, University title, or University employment, in any manner, whether verbal or written, nor shall he claim any affiliation with Dr. Memari or Mr. Parfitt, unless a separate written request is made and separate written approval is provided.

    **8.**    **Dismissal of Complaint, Withdrawal of the PHRC Complaints, and Pursuit of Released Claims.**  Solkoff represents that, with the exception of the Complaint and the PHRC Complaints, he has not filed any charges, complaints, or lawsuits with respect to any claims this Agreement purports to waive ("Released Claims").

    **a.**    **Dismissal of Complaint.**  Solkoff agrees to dismiss the Complaint with prejudice within five (5) business days following the latter of: 1) the Effective Date of this Agreement; or 2) the approval of all or part of this Agreement by the Court.  Solkoff agrees to file any other withdrawals, stipulations, affidavits, or other documents as may be required by the Eastern District of Pennsylvania to accomplish dismissal of the Complaint with prejudice and without costs, interest, or fees to either of the Parties.

    **b.**    **Withdrawal of PHRC Complaints.**  Solkoff agrees to voluntarily withdraw his pending PHRC Complaints with prejudice and without costs, interest, or fees to any of the Parties.  Solkoff shall execute and file a withdrawal of the PHRC Complaints within five (5) business days following the latter of: 1) the Effective Date of this Agreement; or 2) the approval of all or part of this Agreement by the Court.  Solkoff agrees to file any other withdrawals, stipulations, affidavits, or other documents as may be required by the PHRC to accomplish dismissal of the PHRC Complaints with prejudice and without costs, interest, or fees to any of the Parties.

    **c.**    **Pursuit of Released Claims.**  Solkoff represents that he has not filed any complaints or lawsuits with respect to any claims, other than those referenced herein, covered by the above Complete Release of Claims.  To the maximum extent permitted by law, Solkoff covenants not to sue or to institute or cause to be instituted any complaints or lawsuits in any federal, state, or local court against any of the Released Parties, based on any such Released Claims.  Solkoff promises never to seek or accept any damages, remedies, or other relief for himself personally (any right to which he hereby expressly waives) by the pursuit of any such Released Claims in court litigation filed by him or on his behalf.

    **d.**    **Administrative Claims.**  Solkoff agrees not to seek or accept and acknowledges that he is not entitled to any monetary relief, whether for himself individually or as a member of a class or group, arising from a discrimination charge filed by him or on his behalf against the Defendants.  This Agreement prohibits Solkoff's ability to pursue any claims against any of the Defendants seeking monetary relief or other remedies for himself and/or as a representative on behalf of others.  Nothing in this Agreement precludes Solkoff from reporting other, unrelated possible violations of federal law or regulation to any governmental agency or entity, including but not limited to the Department of Justice, the Securities and Exchange Commission, the Congress, or from making other disclosures that are protected under the whistleblower provisions of federal law or regulation without prior approval of the Defendants.

  **e.** No federal, state, or local government agency is a party to this Agreement, and none of the provisions of this Agreement restricts or in any way affects a government agency's authority to investigate or seek relief in connection with any of the Released Claims. However, if a government agency were to pursue any matters falling within the Released Claims, Solkoff and the Defendants agree that this Agreement will control as the exclusive remedy and full settlement of all such Released Claims as between the Parties. This Agreement is a binding contract between the Parties. Therefore, the Agreement affects the Parties' rights only, with no impact on any government agency.

  **9.** **Successors.** This Agreement binds Solkoff, his heirs, administrators, representatives, executors, successors, and assigns, and will inure to the benefit of all of the Released Parties and their respective heirs, administrators, representatives, executors, successors, and assigns.

  **10.** **Non-Admission of Liability.** The Parties agree that neither this Agreement nor the provision of the Settlement Payment constitutes an admission by any Party (including the Defendants and the Released Parties) of any violation of any federal, state, or local law, statute, regulation, common law, breach of any contract, or any other wrongdoing of any type. The act of offering this Agreement will not be used as evidence of any liability or unlawful conduct of any kind.

  **11.** **Confidentiality.** Solkoff agrees that he, on his own behalf and on behalf of his attorney, agents, relatives, accountants, and any other agents, shall make all reasonable and permissible efforts to maintain the confidentiality of the terms of this Agreement and any amounts offered or demanded by either party. Unless ordered by the Court (see Paragraph 12), Solkoff shall not disclose any information relating to the amount and fact of this Agreement to any individual other than their tax advisors, financial planners, and counsel (who shall be bound by this confidentiality provision), and then only to the extent necessary to obtain legal, financial planning, or tax reporting advice. This confidentiality provision is a material term of this Agreement.

  **12.** **Court Approval of Agreement.** The Parties agree to seek Court approval of this Agreement only if absolutely necessary and mandated by the Court, and even then, only to the narrowest extent mandated by the Court. If so mandated, the Parties will make every effort to jointly attempt to seek Court approval under seal, or in camera, or both, with the goal of maintaining confidentiality to the greatest extent possible. The Parties understand that confidentiality may not be guaranteed with respect to settlements of certain claims.

  **13.** **University Property.** Solkoff acknowledges and affirms that he has returned to the University all University property, including but not limited to all badges, access cards, keys, credit and telephone call cards, telephones, pagers, University vehicles, computers and computer-related equipment (i.e., hardware, software, diskettes, etc.), and all originals and copies of books, records, printouts, and any other documents or equipment owned and maintained by the University. Solkoff further agrees that should he locate any additional University property in the future, he shall immediately return it to his counsel, who shall return it, in turn, to counsel for the University.

14. **No Employment.**  Solkoff hereby agrees not to knowingly seek or accept employment, whether directly or indirectly, with the University or with any of the Defendants. Solkoff further agrees that his execution of this Agreement is good and sufficient cause for the University to reject any application Solkoff may make for employment.

15. **Review and Revocation Period.**  Solkoff shall have twenty-one (21) days after receipt of this Agreement to execute it ("Review Period").  If this Agreement is not executed by Solkoff during the Review Period, it will be considered withdrawn.  Solkoff has seven (7) days after he signs the Agreement in which to revoke the Agreement ("Revocation Period").  To revoke the Agreement, Solkoff must state in writing the intention to do so and must deliver that writing before the close of regular business hours on that seventh day.  Such notice of revocation must be addressed to the attention of the Defendants' counsel, James A. Keller, Esq. and may be delivered (i) by hand delivery, (ii) by overnight courier, or (iii) by certified mail, return receipt requested.  If Solkoff exercises his right to revoke this Agreement during the Revocation Period, this Agreement in its entirety becomes null and void as to both Parties and the Parties are restored to the positions and rights they had before this Agreement was signed.  The University, Dr. Memari, and Mr. Parfitt will not be bound by this Agreement until Solkoff has signed the Agreement and the expiration of the applicable Revocation Period without Solkoff revoking the Agreement.

16. **Entire Agreement.**  This Agreement, along with any attachments or incorporations, sets forth the entire agreement between Solkoff, the University, Dr. Memari, and Mr. Parfitt.  Solkoff confirms that he has not relied on any terms, promises, benefits, or agreements of any kind made to him in connection with his decision to sign this Agreement, except for those set forth herein.  This Agreement may be altered or modified only by mutual agreement between and among Solkoff, the University, Dr. Memari, and Mr. Parfitt, set forth in writing, signed by all Parties, and specifically identified as an amendment to this Agreement.

17. **Severability.**  It is intended that the provisions of this Agreement shall be enforced to the fullest extent permissible under the laws and public policies applied in each jurisdiction in which enforcement is sought.  The Parties agree that should any provision of this Agreement be held invalid, void, or unenforceable by a court of competent jurisdiction, the validity of the remaining provisions shall not be affected thereby, except that if the Complete Release of Claims is deemed void or unenforceable, either in whole or in part, the entire Agreement shall be voidable at the University's option.

18. **Choice of Law.**  This Agreement shall be governed by the laws of the Commonwealth of Pennsylvania, without regard to any conflict of law principle that would dictate the application of the laws of another jurisdiction.

19. **Counterparts.**  This Agreement may be executed in its original version or in any copies, counterparts, or other duplicates, and thus all signatures need not appear in the same documents.

20. **Knowing and Voluntary Agreement.**  By signing this Agreement, Solkoff

acknowledges and agrees that:

    **a.**    Solkoff has read and understood this Agreement.

    **b.**    The University advised Solkoff to consult with an attorney of his own choosing regarding the terms and meaning of this Agreement prior to executing this Agreement, and that he did so to the extent he deemed appropriate.  Solkoff acknowledges that this Agreement was negotiated on his behalf by an attorney of his choosing.

    **c.**    Solkoff understands the Agreement and knows that he is giving up important rights in exchange for consideration to which he is not otherwise already entitled.

    **d.**    Solkoff's complete release of claims in Paragraph 4 of this Agreement is knowing and voluntary and does not apply to rights and claims that may arise after the date on which he executes this Agreement.

    **e.**    Solkoff had twenty-one (21) days to review and consider this Agreement prior to signing it and may revoke this Agreement at any time within seven (7) days after he executes this Agreement.  This Agreement does not become effective or enforceable until the seven (7) day revocation period has expired.  **SOLKOFF ACKNOWLEDGES AND AGREES THAT HE HAS FULLY READ, UNDERSTANDS, AND VOLUNTARILY ENTERS INTO THIS AGREEMENT.  SOLKOFF ACKNOWLEDGES AND AGREES THAT HE HAS HAD AN OPPORTUNITY TO ASK QUESTIONS AND CONSULT WITH AN ATTORNEY OF HIS CHOICE BEFORE SIGNING THIS AGREEMENT.  SOLKOFF FURTHER ACKNOWLEDGES THAT HIS SIGNATURE BELOW IS AN AGREEMENT TO RELEASE THE UNIVERSITY, DR. MEMARI, AND MR. PARFITT FROM ANY AND ALL CLAIMS.**

IN WITNESS WHEREOF, the Parties have executed this Agreement on the date and year set forth below.

Joel Solkoff

Date: September 14, 2019        *[signature]*

Ali Memari

Date: _____            _____

M. Kevin Parfitt

Date: _____            _____

The Pennsylvania State University

Date: _____            _____
                                [NAME, TITLE]

8

IN WITNESS WHEREOF, the Parties have executed this Agreement on the date and year set forth below.

Joel Solkoff

Date: _____   _____

Ali Memari

Date: 9/18/19   *[signed]*

M. Kevin Parfitt

Date: _____   _____

The Pennsylvania State University

Date: _____   _____
Susan Wiedemer
Associate Controller, Assistant Treasurer

8

IN WITNESS WHEREOF, the Parties have executed this Agreement on the date and year set forth below.

                                        Joel Solkoff

Date: _____       _____

                                        Ali Memari

Date: _____       _____

                                        M. Kevin Parfitt

Date: 9-23-19               */s/ M. Kevin Parfitt/*

                                        The Pennsylvania State University

Date: _____       _____

                                        Susan Wiedemer
                                        Associate Controller, Assistant Treasurer

IN WITNESS WHEREOF, the Parties have executed this Agreement on the date and year set forth below.

Joel Solkoff

Date: _____                    _____

Ali Memari

Date: _____                    _____

M. Kevin Parfitt

Date: _____                    _____

The Pennsylvania State University

Date:  9/19/19                                   ___*signature*_____
                                                         Susan J. Wiedemer
                                                         Interim Associate Vice President for
                                                         Finance & Corporate Controller

8