IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Joel Solkoff,                          :     CIVIL ACTION
                                       :     NO. 18-683
            Plaintiff,                 :
      v.                               :
                                       :
The Pennsylvania State                 :
University, et al.,                    :
                                       :
            Defendants.                :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              January 23, 2020

## I.    Introduction

Plaintiff Joel Solkoff performed work on behalf of Defendant Pennsylvania State University. The parties disagree as to how many hours Soloff worked for Penn State and his status as an employee. Solkoff filed this action to collect unpaid wages under the Fair Labor Standards Act ("FLSA") and various federal and state statutes.

The parties have settled the action. Before the Court is a motion to approve the settlement, including the amount of attorneys' fees.

Although the Court finds that the amount of the settlement is fair and reasonable, as well as the request for attorneys' fees, the Court will not approve the settlement agreement because the inclusion of a confidentiality clause and

the broad general release would frustrate the purpose of the employees' protections under the FLSA.

## II.  Background

Joel Solkoff is a 71-year-old author who is paralyzed and is an advocate, through his writing, for people with disabilities.  He has worked as a journalist, technical writer, and speech writer, and in 2009 he began participating in the Experience Works program funded by the United States Department of Labor.  Under this program, Solkoff worked in Pennsylvania State University's Department of Architectural Engineering and was paid a minimum wage for ten hours of work per week.

When Solkoff's participation in the program ended in 2012, his relationship with Penn State continued, now as an adjunct research assistant.  During this time, Solkoff held himself out as an employee of Penn State, was given access to various Penn State facilities, and co-authored a paper with a Penn State employee.  Solkoff alleges that at some point during the relationship, Penn State offered him a so-called gentleman's agreement under which Solkoff performed work for Penn State for which he was never compensated.  Later, Penn State organized a webinar about visitability in housing for people with disabilities, and Solkoff was not allowed to participate in the webinar.  Solkoff repeatedly complained about his exclusion from

this webinar.  Ultimately, on October 13, 2017, Penn State terminated Solkoff.

Once terminated by Penn State, Solkoff brought suit alleging claims under the FLSA, the ADA, Pennsylvania employment statutes, § 1983, and for unjust enrichment.  Penn State filed a motion to dismiss, which was granted in part and denied in part. Remaining in the case are the FLSA claim, the Pennsylvania employment statutes claims, the unjust enrichment claim, and the § 1983 claim for violations of the First Amendment.  The parties dispute the amount of damages and whether Solkoff was an employee.  Solkoff alleges that he worked between 25 to 30 hours per week (although some weeks more than 40 hours) for 46 to 52 weeks per year for the approximately six years (sometime in 2012 to October 2017) he worked for Penn State.  The proposed settlement includes a general release of all claims in exchange for $97,500, with $35,288.93 going to attorneys' fees and costs and $62,211.07 going to Solkoff, and a confidentiality clause.

## III. Legal Standard

FLSA claims may be compromised or settled by Department of Labor supervision or district court approval. Howard v. Phila. Hous. Auth., 197 F. Supp. 3d 773, 776 (E.D. Pa. 2016).  When the parties seek approval by the district court, the settlement will be approved if it is "a reasonable

3

compromise of disputed issues [rather] than a mere waiver of
statutory rights brought about by an employer's overreaching."
Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354
(11th Cir. 1982).  The Court will approve a settlement of FLSA
claims if it settles a bona fide dispute and "(1) the settlement
is fair and reasonable for the employee(s), and (2) the
agreement furthers the FLSA's implementation in the workplace."
Howard, 197 F. Supp. 3d at 777 (footnote omitted).

## IV.  Discussion

The agreement meets most of the requirements for FLSA
settlement approval.  First, there are bona fide disputes in
that the parties disagree about the number of hours worked by
Solkoff and whether he was an employee.  Second, the settlement
amount is fair and reasonable because the amount of the
settlement is a substantial portion of the FLSA damages claimed
by Solkoff in light of the likelihood of success and the
existence of arm's-length negotiation.  Third, the attorneys'
fees requested are reasonable in the totality of the
circumstances.

But there are two problems with the settlement
agreement: an overbroad release of claims and a confidentiality
clause.  Although the settlement agreement contains a
severability clause, it explicitly does not apply to the release

4

provision.  Thus, if the release is not approved, the settlement agreement is unenforceable.

Approving the overbroad release clause and the confidentiality clause would frustrate the purpose of the FLSA because these clauses constitute the type of overreach the FLSA intends to remedy.  Accordingly, the settlement agreement will not be approved.

## A.    Bona Fide Dispute

The parties have bona fide disputes about how many hours Solkoff worked and whether he was a Penn State employee. A settlement agreement involves a bona fide dispute if there are factual issues and not only legal issues, especially if the settlement reflects a reasonable compromise over an issue of fact such as the amount of back wages.  Howard v. Phila. Hous. Auth., 197 F. Supp. 3d 773, 777 (E.D. Pa. 2016).  A dispute about employment status is not a bona fide dispute in a purely private FLSA settlement,[1] but it may be a bona fide dispute in a

---

[1] See D.A. Schulte, Inc., v. Gangi, 328 U.S. 108, 113 n.8, 116 (1946) (concluding in evaluating a purely private settlement "that neither wages nor the damages for withholding them are capable of reduction by compromise of controversies over coverage," while noting that "the requirement of pleading the issues and submitting the judgment to judicial scrutiny may differentiate stipulated judgments from compromises by the parties"); Martin v. Spring Break '83 Prods., L.L.C., 688 F.3d 247, 255 (5th Cir. 2012) ("[W]e hold that the payment offered to and accepted by Appellants, pursuant to the Settlement Agreement, is an enforceable resolution of those FLSA claims predicated on a bona fide dispute about time worked and not as a compromise of guaranteed FLSA substantive rights themselves."); Martinez v. Bohls Bearing Equip. Co., 361 F. Supp. 2d 608, 631 (W.D. Tex. 2005) ("Therefore, the Court holds that,

settlement presented to the Court for approval in the context of a lawsuit.  See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982) ("If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.").[2]

The existence of a bona fide dispute requires "the dispute [to] fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented."  Kraus v. PA Fit II, LLC, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016).  And the "Settlement Agreement's recital [denying liability] coupled with Defendant's continued denial of Plaintiff's allegations are sufficient evidence of a bona fide dispute."  Howard, 197 F. Supp. 3d at 778.

---

according to the language of the FLSA, its amendment by the Portal-to-Portal Act of 1947 and the Fair Labor Standards Amendments of 1949, and its interpretation in the case law, parties may reach private compromises as to FLSA claims where there is a bona fide dispute as to the amount of hours worked or compensation due.").

[2] See also Bettger v. Crossmark, Inc., 2015 WL 279754, at *6 (M.D. Pa. Jan. 22, 2015) (finding a bona fide dispute where "both the factual underpinnings of [the plaintiff's] claims and [the plaintiff's] legal right to FLSA coverage are debatable on the present record.").

Here, there is evidence that Penn State rejected the FLSA claim by denying the number of hours Solkoff claimed to have worked and denying Solkoff's allegation that he was an employee of Penn State. Penn State denied liability throughout the proceedings and continues to do so in the settlement agreement. In its Answer to the Second Amended Complaint, Penn State denied the number of hours Solkoff claimed he worked and denied that Solkoff was an employee. And Penn State filed three motions to dismiss, two of which challenged the FLSA claim. These denials and legal challenges constitute evidence of Penn State's rejection of the claim sufficient to find that there is a bona fide dispute.

### B.    Fair and Reasonable

The agreement is fair and reasonable because the amount of the settlement is adequate and the amount of requested of attorneys' fees is reasonable. Considering the likelihood of success and the existence of arm's-length negotiation, the amount of the settlement compensates Solkoff for a fair portion of claimed back pay and liquidated damages. And the attorneys' fees requested are reasonable in the totality of the circumstances.

### 1. Fairness of Settlement Amount

The settlement amount is fair to Solkoff because the amount is reasonable considering the damages claimed, the likelihood of success, and the existence of arm's-length negotiation. This Court has recognized that some of the factors used to evaluate the fairness of class action settlements are appropriate to evaluate the fairness of FLSA settlements. <u>Howard</u>, 197 F. Supp. 3d at 777 n.1 (citing <u>Girsh v. Jepson</u>, 521 F.2d 153, 157 (3d Cir. 1975)). Namely, the cost-benefit analysis of settling versus proceeding to trial and the existence of an arm's-length negotiation are appropriate considerations in the FLSA settlement context. See <u>Howard</u>, 197 F. Supp. 3d at 778 (focusing on the likelihood of success of the claim and the opportunity of counsel to obtain discovery and appreciate the merits and risks of proceeding to trial).[3]

---

[3] <u>See also</u> <u>Sarceno v. Choi</u>, 66 F. Supp. 3d 157, 172 (D.D.C. 2014) ("The totality of circumstances approach examines three primary aspects of the agreements to evaluate their fairness and reasonableness: (1) whether the employer is 'overreaching' to secure a waiver of rights; (2) whether the settlement was reached by arms' length negotiation; and (3) whether the plaintiffs would have difficulty obtaining a judgment."); <u>Wolinsky v. Scholastic Inc.</u>, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) ("In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." (quoting <u>Medley v. Am. Cancer Soc.</u>, 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010))).

That being said, the fairness of the settlement primarily depends on the amount of the settlement compared to the amount the plaintiff claims in FLSA damages. See Kraus v. PA Fit II, LLC, 155 F. Supp. 3d 516, 532 (E.D. Pa. 2016) ("The Court finds the compensation terms fair and reasonable because the settlement amount is significant in light of Plaintiff's claim."). And for approval under the FLSA, the amount of the settlement cannot be less than the amount of back pay owed to the employee because a settlement for less than the back pay owed contravenes the FLSA's policy of compensating workers at a minimum rate for time worked. See Walton v. United Consumers Club, Inc., 786 F.2d 303, 306 (7th Cir. 1986) ("Otherwise the parties' ability to settle disputes would allow them to establish sub-minimum wages."). But where there is a bona fide dispute about the amount or existence of liability, the parties may reach a reasonable compromise over back pay.[4] Under these

_____

[4] See Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 203 (2d Cir. 2015) ("These cases leave open the question of whether employees can enforce private settlements of FLSA claims where there is a bona fide dispute as to liability, i.e., the number of hours worked or the amount of compensation due. In considering that question, the Eleventh Circuit answered 'yes,' but only if the DOL or a district court first determines that the proposed settlement 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" (citing Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1355 (11th Cir. 1982))); Martin v. Spring Break '83 Prods., L.L.C., 688 F.3d 247, 256 (5th Cir. 2012) (noting that where "[t]he Settlement Agreement was a way to resolve a bona fide dispute as to the number of hours worked—not the rate at which Appellants would be paid for those hours"—there may be a compromise in the amount of back pay); Walton, 786 F.2d at 306 (noting that the supervision of settlements envisioned by the FLSA calls for settlement approval only when "something close to full payment of the wages and overtime due" is achieved in the agreement).

circumstances, the Court's role is to scrutinize the compromise by comparing the amount originally claimed to the settlement amount.

When, as here, the gross amount of the settlement is not apportioned among the various FLSA and non-FLSA claims, the Court will consider whether the gross amount satisfies the FLSA claim only.  This is so because the Court is required to approve only the part of the settlement agreement that implicates the FLSA claims.  See Kraus, 155 F. Supp. 3d at 525–26 (noting that judicial approval of FLSA claims is an exception to the general rule allowing settlements without judicial involvement).  And the parties are free to settle the non-FLSA claims without court approval or supervision.

On the other side of the equation, the relevant settlement amount is the total amount of the settlement even though the total settlement amount includes attorneys' fees.[5]  In considering the adequacy of the FLSA claim settlement, this Court and other courts have used the total amount of the settlement to evaluate its fairness.  See id. at 532–33 (comparing the total $18,000 paid under the settlement to the amount claimed by the plaintiff despite the plaintiff only

_____

[5] Although the total amount might not be the relevant amount when the settlement agreement allocates a specific amount for the FLSA claim, that is not the case here, where the settlement is an unallocated lump sum.

receiving about $11,000 and the rest going to attorneys' fees). Attorneys' fees are included in the settlement amount considered in the fairness inquiry because attorneys' fees are part of the plaintiff's remedy. See <u>Evans v. Jeff D.</u>, 475 U.S. 717, 731-32 (1986) (noting that attorneys' fees do not belong to the attorney but are instead part of the plaintiff's remedial arsenal).

In other words, the Court's role is to ensure that the gross amount of the settlement is at least adequate to compensate the claimant for the FLSA violation and not that it is fair and reasonable as to the non-FLSA claims asserted by the plaintiff.[6]

In evaluating the fairness of the FLSA settlement, the starting point in the analysis is a determination of the back pay owed, i.e., the rate of pay times the hours worked.

First, the rate of pay is determined. In an action alleging a violation of the minimum wage provision of the FLSA, the rate of pay will be $7.25 per hour—the statutory rate in effect during the relevant time. 29 U.S.C. § 206(a)(1). Of course, the employee may bring a breach of contract claim or

---

[6] The Court is not required to allocate an unallocated global settlement among various claims. If the Court was required to allocate the settlement amount among the various claims, it would be inconsistent with the ability of private parties to settle non-FLSA claims at their discretion.

11

pursue state remedies to force payment of an agreed upon rate above the minimum wage or overtime provisions of the FLSA, but a violation of the FLSA minimum wage provision only entitles the plaintiff to compensation for minimum wages plus liquidated damages.[7] In an action alleging a violation of the maximum hours provision, the rate will be one and one-half the regular rate, which is the wage actually paid to the plaintiff. 29 U.S.C. § 207(a),(e). In this case, there is no contract[8] and Solkoff was not actually paid more than the minimum wage, so the regular rate is taken as being the minimum wage, i.e., $7.25 per hour.

Next, the number of hours worked is determined. Based on the estimates provided by Solkoff in the Second Amended Complaint, which Penn State denies, Solkoff worked between 6,900 and 9,360 hours over the six years[9] of the parties' relationship.

---

[7] See 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."); Rogers v. City of Troy, 148 F.3d 52, 57 (2d Cir. 1998) ("The FLSA sets a national 'floor' in terms of working conditions, in order to protect workers from the substandard wages and excessive hours that might otherwise result from the free market. Parties may, of course, contract for additional rights above those guaranteed by the statute."); Lopez v. Tri-State Drywall, Inc., 861 F. Supp. 2d 533, 536 (E.D. Pa. 2012) ("Importantly, the FLSA does not create liability for unpaid non-overtime compensation for an employee who was paid at least the minimum wage, even if the employee was paid less than his hourly rate."). But see Hayes v. Bill Haley & His Comets, Inc., 274 F. Supp. 34, 37 (E.D. Pa. 1967) ("Judgment for the plaintiff at the regular rate for non-overtime hours work[ed] can be justified although far above the minimum.").

[8] Although the Second Amended Complaint alleges that there was a "gentlemen's agreement," there is no allegation that this included a rate of pay.

[9] Penn State may not be liable for all of this time due to statute of limitations issues, but Penn State failed to meet its burden at the motion to

12

At the minimum wage rate, excluding any potential overtime,[10] using the hours he estimates in the Second Amended Complaint, Solkoff would be entitled to between $100,050 and $135,720 plus attorneys' fees and costs. These figures include liquidated damages, which are $50,025 and $67,860, respectively.[11]

Thus, the total settlement amount, $97,500, is less than the damages claimed by Solkoff, but it is not an unfair compromise of the claim. Under these circumstances, the Court

_____

dismiss on the statute of limitations ground, and the argument was not subsequently raised. Thus, the time period alleged is the relevant time period for the purpose of calculating the wages claimed by Solkoff.

[10] The parties have not provided enough details to determine how much, if any, overtime Solkoff worked. Solkoff claims in the complaint that he worked more than forty hours on some weeks during the six-year relationship. This is insufficient information to determine the number of overtime hours. But because the original claim of overtime appears minimal and the main dispute is about the number of hours worked, the Court can resolve the fairness of the agreement with the information provided by the parties. Cf. Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 176–77 (S.D.N.Y. 2015) ("The Court therefore has no sense of how the parties' counsel arrived at the opposing maximum recovery figures of $25,000 and $49,000, nor to what extent resolution of the various factual disputes cited in the parties' submission in either side's favor would alter those figures. The parties' submission lacks also any declarations, affidavits or exhibits substantiating its arguments. In the absence of such information, the Court cannot discharge its duty to ensure that the proposed settlement is fair and reasonable." (footnotes omitted)).

[11] Liquidated damages must be included in the calculation of the amount claimed because "the same policy considerations which forbid waiver of basic minimum and overtime wages under the Act also prohibit waiver of the employee's right to liquidated damages." Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1945). Indeed, liquidated damages are compensatory, and a prevailing plaintiff is entitled to liquidated damages unless the defendant can show good faith and a reasonable belief that its behavior was not violative of the FLSA. Sec'y U.S. Dep't of Labor v. Am. Future Sys., Inc., 873 F.3d 420, 433 (3d Cir. 2017). Nonetheless, like back pay, liquidated damages can be compromised to resolve a bona fide dispute. See, e.g., Yong Li v. Family Garden II, Inc., 2019 WL 1296258, at *2 (E.D. Pa. Mar. 20, 2019) (approving an FLSA settlement agreement that did not provide the full amount of liquidated damages).

will look to the amount of the settlement as a percentage of the amount claimed to determine whether the compromise over the number of hours worked is a fair compromise. But there is no magic number, rather, the relevant Girsh factors aid the Court in determining whether the amount of the compromise is appropriate. See Howard v. Phila. Hous. Auth., 197 F. Supp. 3d 773, 777 n.1 (E.D. Pa. 2016) (discussing Girsh v. Jepson, 521 F.2d 153 (3d Cir. 1975)).

In this case, the settlement amount is consistent with what has been approved by other courts in this district and the relevant Girsh factors favor approval. The total amount of the settlement, $97,500, is 71% of the $135,720 Solkoff claimed as damages, and courts in this district have approved FLSA settlements that are about 70% of the claimed damages in similar circumstances.[12] Further, because Solkoff did not track the hours he worked and there is a dispute about the actual amount of time worked, there is great uncertainty regarding the amount Solkoff could ultimately recover.[13] And the dispute about

---

[12] See, e.g., Yong Li, 2019 WL 1296258, at *2 ("Although the settlement amount is about $14,700 less than Plaintiff's demand, the settlement amount fully compensates him for his unpaid wages and awards him seventy percent of the amount he demanded."); McGee v. Ann's Choice, Inc., 2014 WL 2514582, at *2 (E.D. Pa. June 4, 2014) ("The settlement amount of $27,455.57 represents 71% of Plaintiffs' total actual and liquidated estimated damages, a figure that the Court considers fair and reasonable.").

[13] This would not preclude recovery, but it does underscore that it is unclear to what extent Solkoff would be able to meet his burden of proving damages in this case. See Martin v. Selker Bros., 949 F.2d 1286, 1297 (3d Cir. 1991) ("In the absence of adequate employer records of employees' wages and hours,

14

Solkoff's employment status creates doubt as to whether he would recover at all at trial. Finally, the record shows the parties have taken discovery and that the settlement is the result of arm's-length negotiation.

Thus, "balancing the likelihood of success against the benefit of a certain settlement" and taking into account that through discovery "counsel had an appreciation of the merits and risks of proceeding to trial before negotiating the Settlement Agreement," the amount of the settlement here is fair and reasonable. Howard, 197 F. Supp. 3d at 778.

### 2. Attorneys' Fees

The $35,288.93 in attorneys' fees and costs provided for by the proposed Agreement is reasonable. Under the FLSA, the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Percentage of recovery is the prevailing method used by courts in the Third Circuit for wage and hour cases. Keller v. TD Bank, 2014 WL 5591033, at *14 (E.D. Pa. Nov. 4, 2014). The

---

as required by the FLSA, the solution is not to penalize the employees by denying recovery based on an inability to prove the extent of undercompensated work, but rather to allow the employee or the Secretary to submit sufficient evidence from which violations of the Act and the amount of an award may be reasonably inferred.").

percentage-of-recovery method awards a fixed portion of the settlement fund to counsel.  <u>McGee v. Ann's Choice, Inc.</u>, 2014 WL 2514582, at *4 (E.D. Pa. June 4, 2014).

When evaluating the appropriateness of an attorneys' fee award under the percentage-of-recovery method, the Court considers the following factors:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

<u>Gunter v. Ridgewood Energy Corp.</u>, 223 F.3d 190, 195 n.1 (3d Cir. 2000).

The <u>Gunter</u> factors relevant to this case, which favor approval of the attorneys' fee request, include the size of the fund created, the skill of the attorneys involved, and the amount of time devoted to the case by counsel.  And, although the litigation was not particularly complex and could have been managed in a more efficient manner, on balance, the request satisfies <u>Gunter</u>.

Finally, a cross-check of the requested fee ($35,288.93) with the lodestar calculation ($65,000) tends to

confirm the reasonableness of the request.  See <u>In re Rite Aid</u>

<u>Corp. Sec. Litig.</u>, 396 F.3d 294, 306-07 (3d Cir. 2005)

(describing the lodestar method and noting that it may be used

as a "cross-check" for the percentage-of-recovery method).

Under these circumstances, the Court finds the

requested attorneys' fees to be reasonable.

**C.    Frustration of FLSA**

The confidentiality clause and release clause

frustrate the FLSA's purpose.  The central purpose of the FLSA

was to provide a remedy for the consequences resulting from "the

unequal bargaining power as between employer and employee."

<u>Brooklyn Sav. Bank v. O'Neil</u>, 324 U.S. 697, 706 (1945).  One of

the main consequences of unequal bargaining power was

substandard wages, thus the FLSA sought "to secure for the

lowest paid segment of the nation's workers a subsistence wage."

<u>Kraus v. PA Fit II, LLC</u>, 155 F. Supp. 3d 516, 525 (E.D. Pa.

2016) (citing <u>D.A. Schulte v. Gangi</u>, 328 U.S. 108, 114 (1946)).

In accordance with this central purpose, the general releases

and confidentiality clauses in FLSA settlement agreements will

be rejected.

### 1. Confidentiality Clause

Generally, confidentiality clauses in FLSA settlement agreements frustrate the purpose of the FLSA by facilitating information asymmetry that hinders FLSA enforcement. The defendant's employees, as well as the public at large, have an interest in ensuring fair wages and thus an interest in information about the defendant's settlement of claims alleging a failure to provide fair wages. Mabry v. Hildebrandt, 2015 WL 5025810, at *3 (E.D. Pa. Aug. 24, 2015); see also Cuttic v. Crozer-Chester Med. Ctr., 868 F. Supp. 2d 464, 467 (E.D. Pa. 2012) (noting the public interest in fair wages). And by preventing plaintiffs from discussing their cases with other potentially harmed employees, approval of "confidentiality clauses would create new imbalances of information between Defendants and their employees." Mabry, 2015 WL 5025810, at *3. In creating this information asymmetry, confidentiality clauses stifle the robustness of FLSA enforcement by creating an obstacle to detecting FLSA violations and to vindicating FLSA rights. See Dees v. Hydradry, Inc., 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010) ("[C]ompelled silence unreasonably frustrates implementation of the 'private—public' rights granted by the FLSA and thwarts Congress's intent to ensure widespread compliance with the statute." (footnote omitted)).

Under certain circumstances, a confidentiality clause may be approved if it is limited to prevent its undermining the purpose of the FLSA. In certain cases, the purpose of the FLSA may not be frustrated by a confidentiality clause that does not create information asymmetry between the defendant and his employees, namely by allowing the plaintiff to discuss the case and settlement with other employees. See McGee v. Ann's Choice, Inc., 2014 WL 2514582, at *3 (E.D. Pa. June 4, 2014) (approving an FLSA settlement agreement with a confidentiality clause that was "narrowly drawn to prohibit only statements to the media" and left the plaintiff "free to discuss the litigation with friends, family, employees").[14] Further, a confidentiality clause limited to prohibiting discussions with the media ordinarily will not frustrate the FLSA. See In re Chickie's & Pete's Wage & Hour Litig., 2014 WL 911718, at *3 (E.D. Pa. Mar. 7, 2014) ("[The approved clause] only prohibits Plaintiffs from disparaging Defendants or discussing the substance and negotiations of this matter with the press and media.").

In this case, approving the confidentiality clause would frustrate the FLSA's purpose because it is not limited to

---

[14] But see Lovett v. Connect America.com, 2015 WL 5334261, at *6 (E.D. Pa. Sept. 14, 2015) (approving a confidentiality clause despite the clause not excluding employees because "[a]ny affected employee can calculate the potential value of his or her FLSA rights as represented by this settlement").

prevent its creating information asymmetry. Under the confidentiality clause here, Solkoff may not share basic information with Penn State's employees. The parties' argument that the confidentiality provision should be approved because it is narrowly tailored in that it only requires "reasonable and permissible efforts" to maintain confidentiality misses the mark. The purpose of the FLSA is frustrated when alleged FLSA violations by an employer are concealed from its employees and the public. Therefore, contractually binding Solkoff to make reasonable efforts to maintain confidentiality regarding this settlement will be disapproved.

The settlement agreement provides that in the event any clause in the agreement is disapproved by the Court, such clause(s) shall be severed from the agreement. Therefore, while the confidentiality clause cannot be approved and must be severed, severing the confidentiality clause does not void the balance of the settlement agreement.

## 2. General Release

The broad release of claims that includes unrelated claims and claims unknown to the plaintiff frustrates the purpose of the FLSA by allowing employers to use their superior bargaining power to disadvantage FLSA claimants. Overbroad release provisions in FLSA settlement agreements subvert the

goal of remedying the consequences of unequal bargaining power.
See, e.g., Bettger v. Crossmark, Inc., 2015 WL 279754, at *8
(M.D. Pa. Jan. 22, 2015) (collecting cases).  In this case, the
general release provides for the discharge of any claims,
related or unrelated, known or unknown, which Solkoff may assert
against Penn State.  In other words, it "erase[s] all liability
whatsoever in exchange for partial payment of wages [to Solkoff]
allegedly required by statute."  Lopez v. Nights of Cabiria,
LLC, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015).  This type of
overbroad release clause allows the employer to extract from the
plaintiff a benefit beyond what he is compensated for in
exchange for payment of the fair wages he is owed.  See Howard
v. Phila. Hous. Auth., 197 F. Supp. 3d 773, 780 (E.D. Pa. 2016)
("The release of an unknown claim based on a separate statutory
cause of action frustrates the fairness of the benefit otherwise
provided under the proposed Settlement Agreement.").

Because, unlike the confidentiality provision, the
release provision is explicitly not severable, the Court will
not approve the settlement agreement.

## V.  Conclusion

The Court finds that there is a bona fide dispute and
that the financial terms of the settlement are fair and
reasonable.  It also finds the request for attorneys' fees to be

reasonable.  The Court will disapprove the confidentiality clause and the general release.  Because the general release is not expressly subject to severance if disapproved, the settlement agreement is unenforceable.  The parties may resubmit a revised settlement agreement consistent with this opinion.